# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTOR R. COTTON, | : | No. 1:CV-00-1709 |
| | : | |
| Plaintiff, | : | |
| | : | Judge Kane |
| *vs.* | : | |
| | : | |
| THREE RIVERS HEALTH PLANS, | : | |
| INC., a corporation, | : | |
| | : | |
| Defendant. | : | |

**FILED**
HARRISBURG, PA

FEB 13 2002

MARY E. D'ANDREA, CLERK

---

## DEFENDANT'S PRETRIAL MEMORANDUM

---

**Date conference was held by counsel:** January 2, 2002

**A.    A brief statement as to federal court jurisdiction.**

This Court originally had jurisdiction over this case because there was a federal question presented.   28 U.S.C.  § 1331.   It exercised supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.  The Court has now granted summary judgment on the federal claim.

**B.    A summary of the facts and contentions as to liability.**

Because of the motion practice in this case, the Court is familiar with the factual background.  Accordingly, this recitation will be particularly succinct. Plaintiff Victor Cotton was employed as a medical director for Three Rivers, a health plan based in western Pennsylvania.  Dr. Cotton's performance was mixed; while he satisfactorily performed many of his job duties, he unfortunately engaged in a long-standing pattern of conduct in which he openly challenged and alienated his supervisors and the company's outside medical service providers, and he repeatedly and persistently mishandled his interactions with his subordinates.  In May 1999, after a series of such inappropriate actions by Dr. Cotton (driven in significant part by his apparent ambition to supplant Warren Carmichael as chief executive officer of the company), Three Rivers' management decided to terminate Dr. Cotton's employment.

Dr. Cotton brought suit more than a year later, asserting a significant number of fanciful allegations in his 394-paragraph, seven-count complaint.  Through a motion to dismiss and a motion for summary judgment, Dr. Cotton's claims have been narrowed to one: a wrongful-discharge allegation premised on Pennsylvania's Medical Gag Clause Prohibition, 40 P.S. § 991.2113(c).  As noted below, the Court's decisions have significantly narrowed the scope of this case such that the trial should be focused on only a very few of Dr. Cotton's allegations, as only a few of them could be relevant to the remaining claim.[1]

---

[1]    With the Court's determination to allow only the wrongful-discharge claim to proceed to trial, there is now some question about the appropriateness of Dr. Cotton's jury demand.  Because the jury demand remains in the case at present, this memorandum will refer to trial by jury.

**C.     A comprehensive statement of undisputed facts as agreed to by counsel.**

Counsel have agreed only to certain basic facts of Dr. Cotton's employment, including when his employment began, when it ended and the titles he held.

**D.     A brief description of damages.**

Three Rivers claims no damages in this action.   Dr. Cotton has claimed various forms of compensatory and punitive damages.[2]

**E.     Names and addresses of witnesses, along with the specialties and qualifications of experts to be called.**

1.     T. Warren Carmichael
       Three Rivers Administrative Services
       300 Oxford Drive
       Monroeville, PA  15146

2.     William Lawson
       Dobbs Management Service, Inc.
       1000 Ridgeway Loop Road
       Memphis, TN  38120

3.     Beverly Ludlum
       Three Rivers Administrative Services
       300 Oxford Drive
       Monroeville, PA  15146

4.     Leslie Gelpi, CPA
       Three Rivers Administrative Services
       300 Oxford Drive
       Monroeville, PA  15146

---

[2]     Dr. Cotton has suggested that he has a right to seek damages for emotional distress.  Three Rivers is unaware of any legal authority supporting such a claim, and Dr. Cotton has provided none.

5.   David W. Thomas, Esq.
     Three Rivers Administrative Services
     300 Oxford Drive
     Monroeville, PA 15146

6.   Patricia Casey
     (current address unknown)

7.   Mark S. Lelinski
     1632 Whitley Drive
     Harrisburg, PA

8.   Jill Guffy
     (current address unknown)

9.   Victor Cotton (as on cross)

10.  Appropriate rebuttal witnesses


**F.    Summary of testimony of each expert witness.**

Neither party designated any expert witnesses.  Because Dr. Cotton did not timely designate himself as an expert witness, Fed. R. Civ. P. 26(a)(2), the Court should not allow him to offer any form of expert testimony.


**G.    Special comment about pleadings and discovery, including depositions and the exchange of medical reports.**

None.

**H.    A summary of legal issues involved and legal authorities relied upon.**

1.    Public-policy exceptions to Pennsylvania's at-will doctrine are to be narrowly construed. *Darlington v. General Electric,* 504 A.2d 306, 319 (Pa. Super. 1986).

2.    A statute that includes its own remedial scheme may not form the basis for a wrongful-discharge claim brought under the public-policy exception to the at-will doctrine. *Darlington,* 504 A.2d at 318.

3.    In order to prove a violation of the "Medical Gag Clause Prohibition" in 40 P.S. § 991.2113(c), a plaintiff must prove that

        a.    He was a health care provider as defined in Section 991.2102;

        b.    He was terminated because

            i.    he advocated for "medically necessary and appropriate health care consistent with the degree of learning and skill ordinarily possessed by a reputable health care provider practicing according to the applicable legal standard of care" or

            ii.    he protested a decision, policy or practice that "the health care provider, consistent with the degree of learning and skill ordinarily possessed by a reputable health care provider practicing according to the applicable legal standard of care, reasonably believes interferes with the health care provider's ability to provide medically necessary and appropriate health care."[3]

4.    The statutory scheme that contains the "Medical Gag Clause Prohibition" at issue in this case draws a clear distinction between "health care services" on the one hand and "prospective utilization review" activities on the

---

[3]    *See* 40 P.S. § 991.2113(c)(1) and (3).  Dr. Cotton has never suggested he filed a grievance as that term is defined by the statute and, so, Section 991.2113(c)(2) has no relevance.

other, as demonstrated by separate definitions of those phrases set forth in 40 P.S. § 991. 2102.

5.     Under Pennsylvania law, the "legal standard of care" applicable to medical determinations must be established by expert testimony. *Lira v. Albert Einstein Medical Center,* 559 A.2d 550, 553-54 (Pa. Super. 1989) ("As a general rule, expert testimony is required to establish the standard of reasonable medical care.").[4]

6.     "[E]ven if an important public policy is involved, a discharge of an employee is lawful if the employer has separate, plausible and legitimate reasons for so doing." *Nix v. Temple University,* 596 A.2d 1132, 1136 (Pa. Super. 1991).

7.     A plaintiff bears the burden of proving causation. *See generally Walsh v. Snyder,* 441 A.2d 365 (Pa. Super. 1981).

8.     A plaintiff bears the burden of proving damages. *Cohen v. Albert Einstein Medical Center,* 592 A.2d 720, 729 (Pa. Super. 1991).

9.     A court should not award damages the existence of which is speculative. *See generally Pashak v. Barish,* 450 A.2d 67, 69 (Pa. Super. 1982).

---

[4]     While most cases in which such expert testimony is required are medical malpractice cases, the General Assembly made clear that it intended the requirement to apply to Section 991.2113(c) as well. The requirement that expert testimony be offered to define the medical standard of care has been in place in Pennsylvania for decades. *Lira,* 559 A.2d at 553-54. The legislature is presumed to act with knowledge of the existing state of the law. *See generally Hutskow v. Washowich,* 628 A.2d 1202 (Pa. Cmwlth. 1993). Accordingly, when the Pennsylvania General Assembly enacted Section 991.2113 in 1998 and used the phrase "the applicable legal standard of care," it must be presumed to have intended that standard of care to be proven by the same evidentiary standards Pennsylvania courts had long required. The requirement makes particular sense in this case, where the medical issues Dr. Cotton asserts are not simple ones and are not within the sphere of knowledge of a lay jury.

10.     "It is well settled that punitive damages will lie only in cases of outrageous behavior, where defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others. Punitive damages are appropriate when an individual's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct." *Bannar v. Miller,* 701 A.2d 232, 242 (Pa. Super. 1997) (citations omitted).

11.     "It is the role of the trial court to determine whether the plaintiff has presented sufficient evidence from which a jury could reasonably conclude that the defendant acted outrageously" before submitting the issue of punitive damages to the jury. *Martin v. Johns-Manville Corp.,* 494 A.2d 1088, 1098 (Pa. 1985).

12.     A plaintiff has a duty to mitigate his damages. *Koppers v. Aetna Casualty & Surety Company,* 98 F.3d 1440, 1448 (3d Cir. 1996).

## I.     Stipulations desired.

The parties have stipulated to the authenticity of most of the documentary evidence the parties have designated as exhibits. They have reserved their rights to object to the admissibility of those exhibits on grounds other than authenticity.

## J.     Estimated number of trial days.

Three Rivers believes that this case should take no more than two or three days for trial.

## K.     Any other matter pertinent to the case to be tried.

Three Rivers believes there is a significant evidentiary matter that the Court should address before the start of the trial.

As a result of the Court's partial grant of summary judgment in this case, there remains only one claim for trial: Dr. Cotton's allegation that he was

terminated in violation of the terms of Pennsylvania's Act 68, specifically 40 P.S. § 991.2113(c).[5]  Of course, one necessary result of the Court's dismissal of all but one claim is that the scope of relevant evidence is significantly narrower.  Dr. Cotton has made a great many allegations since the inception of this litigation (beginning with his 394-paragraph complaint).  Most of those allegations related to claims that have now been dismissed.  Discovery disclosed that many of Dr. Cotton's other claims are without support in the record or are only conditionally relevant.  Three Rivers requests that the Court consider these issues *in limine* as many of the Court's evidentiary rulings can and should be made before trial to avoid needless presentation of evidence, prolonging of the trial or, most critically, unfair prejudice to Three Rivers.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Those facts that are "of consequence to the determination of the action" are framed by the elements of the claims or defenses in the case.   Some evidence is only conditionally relevant.  Fed. R. Evid. 104(b).  In other words, its relevance to a claim or defense in the case is dependant upon proof of some other, "connecting" fact.  Finally, evidence that has some probative value may nonetheless be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

---

[5]    In making this argument, Three Rivers does not intend to waive any objection or exception to the Court's determinations regarding the viability of Dr. Cotton's wrongful-discharge claim.  Three Rivers also does not concede that Dr. Cotton acted as a "health care provider" as contemplated by the statute.

It is particularly important that the Court carefully confine the scope of evidence allowed at the trial of this case because the Pennsylvania appellate courts have made clear that the public-policy exception to the at-will doctrine is to be narrowly construed. *Darlington,* 504 A.2d at 319. Thus, the Court must not take an expansive view of what sort of conduct might run afoul of Section 991.2113(c) and it should strictly construe the statute and accordingly limit the scope of the evidence Dr. Cotton may offer.

In this case, Dr. Cotton has alleged that Three Rivers terminated him because he engaged in the sort of behavior protected by Section 991.2113(c). That provision provides as follows:

> (c)    No managed care plan shall terminate the employment of or a contract with a health care provider for any of the following:

> (1)    Advocating for medically necessary and appropriate health care consistent with the degree of learning and skill ordinarily possessed by a reputable health care provider practicing according to the applicable legal standard of care.

> (2)    Filing a grievance pursuant to the procedures set forth in this article.

> (3)    Protesting a decision, policy or practice that the health care provider, consistent with the degree of learning and skill ordinarily possessed by a reputable health care provider practicing according to the applicable legal standard of care, reasonably believes interferes with the health care provider's ability to provide medically necessary and appropriate health care.

40 P.S. § 991.2113(c).

The meanings of various phrases in Section 991.2113 must be interpreted by reference to the definitions in the statute as a whole. Thus, the phrase "medically necessary and appropriate health care" as used in Section 991.2113(c)(1), and the phrase "provider's ability to provide medically necessary and appropriate health care" as used in Section 991.2113(c)(3), must be interpreted to refer to "health care services" as defined in Section 991.2102. Moreover, Section 991.2102 separately defines "prospective utilization review" activities as a determination to approve or deny payment for, rather than the actual provision of, "health care services." Thus, as neither Section 991.2213(c)(1) nor Section 991.2113(c)(3) refers to prospective utilization review activities, allegations of advocacy for, or objections to interference with the ability to perform prospective utilization review activities are not relevant to any claim that there has been a violation of Section 991.2113(c)(1) or (c)(3). Well-established rules of statutory construction mandate that, when the legislature refers to one thing specifically in a statute, it means to exclude those things not included. *Linan-Faye Construction Company, Inc., v. Housing Authority,* 49 F.3d 915, 920 (3d Cir. 1995). Because Section 991.2113(c) refers to "health care services" and not to "utilization review," advocacy for or protests relating to utilization review cannot form the basis for liability under the statute. *See also, Darlington,* 504 A.2d at 319 (public policy exception to be narrowly construed).[6]

Three Rivers has defended by asserting that it did not terminate Dr. Cotton for any unlawful reason and that, to the contrary, it terminated him because of a long-standing pattern of conduct in which he alienated his supervisors and the company's outside medical service providers, and he repeatedly and persistently mishandled his interactions with his subordinates.

---

[6] As noted above, Dr. Cotton has never alleged that he filed a grievance, so his allegations can not describe a violation of Section 991.2113(c)(2).

Those claims and defenses define the universe of relevant evidence. It also defines what evidence is not relevant. A significant amount of the "evidence" Dr. Cotton has proposed to present to a jury is irrelevant to the claims and defenses in this case, and the Court should exclude it. Fed. R. Evid. 401. Similarly, many of the allegations Dr. Cotton makes are only conditionally relevant: their relevance to Section 991.2113(c) hinges on a showing that the conduct he alleges would, in fact, have a bearing on the provision of medically necessary and appropriate health care to plan enrollees. Fed. R. Evid. 104(b). Finally, with regard to many of Dr. Cotton's allegations, even if there were some modest probative value, that value would be substantially outweighed by the risk of unfair prejudice to Three Rivers, confusion of the issues and waste of time. Fed. R. Evid. 403.

The need for the Court to determine the admissibility of evidence before Dr. Cotton attempts to introduce it at trial is heightened by the dramatic nature of his claims. Dr. Cotton has (incorrectly) alleged that Three Rivers somehow endangered the welfare of its plan enrollees. Given the subject matter, the potential for unfair prejudice arising from such allegations is significant. Moreover, the Court should not allow Dr. Cotton to make his allegations in front of the jury without the Court's having first evaluated their admissibility because, even if Three Rivers objects and the Court sustains the objection, the jury will have heard the claims. In the vernacular, the bell cannot be unrung.

Three Rivers asks the Court to bear in mind Three Rivers' role in the provision of health care services. As Dr. Cotton acknowledged in his deposition, no employee of Three Rivers actually provides medical care to an enrollee. Like medical directors at many health plans, Dr. Cotton's utilization review duties largely involved determinations about which claims to pay, not what medical treatment to give. Thus, as an initial matter, Dr. Cotton will be unable to prove

either that he was a "health care provider" as defined by the statute or that any of his activities were governed by Section 991.2113(c).

Three Rivers will address certain specific evidentiary issues below:

1.    Jill Guffy

Dr. Cotton has alleged that Three Rivers employed (for a short period) a pharmacy director – Jill Guffy – who Dr. Cotton believes was impaired by substance abuse.  As an initial matter, other than Dr. Cotton's bare allegation, there is no evidence that Ms. Guffy was, in fact, in any way impaired.

Moreover, as Dr. Cotton testified in his deposition, Ms. Guffy had no interaction with plan enrollees and dispensed no medication.  Thus, there is no link between Dr. Cotton's allegations about Ms. Guffy and any provision of medical care to any plan enrollee.  Before allowing Dr. Cotton to present any evidence regarding Ms. Guffy, the Court should require that he first offer competent evidence (outside the presence of the jury) that she had an impairment and then offer competent, non-speculative evidence that her impairment affected the quality of care provided to plan enrollees, Fed. R. Evid. 104(b), which Dr. Cotton simply will not be able to do.

In addition, Dr. Cotton admitted in his deposition that his concerns regarding Ms. Guffy's alleged impairment were driven by his alleged concern that she would make an erroneous decision to deny payment for a prescription (and, notably, there is no evidence such a situation ever occurred).  However, even if Dr. Cotton were correct (which he is not) his allegation describes interference with utilization review, not health care services.   For that additional reason, Dr. Cotton's allegations regarding Ms. Guffy are irrelevant to the only claim that remains in this case. *See Darlington,* 504 A.2d at 319 (public policy exception to be narrowly construed).

### 2. Organizational Structure

Dr. Cotton has alleged that, near the end of his employment at Three Rivers, he had a confrontation with Warren Carmichael, the company's chief executive officer, about what Dr. Cotton believed to be a vacancy in the company's organizational structure.   In April 1999, Patricia Casey, who was then the utilization management director, left the company.   Dr. Cotton alleges that the company then failed to immediately elevate his preferred candidate to the then-vacant utilization-management director position and that this failure would have imposed an undue burden on him in performing prospective utilization review activities.   Dr. Cotton's allegations relate solely to the conduct of Three Rivers utilization review function and have no relevance at all to the provision of health care to plan enrollees.[7]   Indeed, Dr. Cotton has failed even to demonstrate that this administrative matter had any effect on utilization review, much less the provision of health care.   Thus, these allegations do not fall within the purview of Section 991.2113(c) and are not relevant to any issue properly pending in this case. *See Darlington,* 504 A.2d at 319 (public policy exception to be narrowly construed).

### 3. Organ Transplant Candidates

Dr. Cotton has alleged that Three Rivers wrongly disenrolled plan participants who became candidates for organ transplantation in order to avoid the expense of those procedures.   Despite requests in interrogatories and in his deposition, Dr. Cotton has thus far failed to identify even one case in which Three Rivers did what he alleges.   His allegations are based on his own speculation premised on hearsay rather than his own personal knowledge.   Moreover, even if

---

[7]   With regard to this matter, as with others, Dr. Cotton has offered the barest speculation based on his theory that any administrative issue with a health plan must somehow have a ripple effect on the health care provided to plan enrollees. He has offered nothing more than that speculation, and the Court should require more before it allows Dr. Cotton to offer his allegation at trial.

Three Rivers had done so (which it did not), such actions would have no direct bearing on the provision of health care.  As noted above, Dr. Cotton has acknowledged that Three Rivers' role in the health care system is not to provide care but to manage utilization through the assessment of medical necessity and pay claims accordingly.  Thus, before any of Dr. Cotton's allegations regarding organ-transplant candidates could be relevant to his Section 991.2113(c) claim, he must offer concrete evidence not only that such improper disenrollments actually occurred but that such actions by Three Rivers actually affected the health care provided to enrollees.  Without such foundational proof, Dr. Cotton's allegations regarding organ-transplant candidates are irrelevant to the only claim remaining before the Court.  Even if there were some modest relevance to this allegation (and there is not), that probative value would be substantially outweighed by the danger of unfair prejudice to Three Rivers.  Such allegations, even if irrelevant to Section 991.2113(c), have the potential to inflame a jury because of the sensitive nature of the persons and entities involved.  Fed. R. Evid. 403.

**L.    Pursuant to Local Rule 16.3, append to this memorandum a prenumbered schedule of exhibits.**

An exhibit list is attached.

**M.    Append any special verdict questions.**

Three Rivers has appended a proposed special verdict form.

**N.    Certification pursuant to Local Rule 16.2:**

Three Rivers will have present at the pre-trial conference a corporate official with settlement authority.

**O.     Certification pursuant to Local Rule 30.10:**

Three Rivers is not aware that any party intends to use deposition testimony for purposes other than impeachment. Three Rivers is unaware of any objections requiring consideration by the Court.

KIRKPATRICK & LOCKHART LLP

Mark A. Rush
David R. Fine
240 North Third Street
Harrisburg, PA  17101
(717) 231-4500

*Counsel for Defendant*

February 13, 2002

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EXHIBIT LISTING

**Abbreviated name of case:** *Cotton v. Three Rivers Health Plans* No. 1:CV-00-1709

Judge Kane

**Name of Party Submitting this list:** Three Rivers Health Plans

| EXHIBIT INITIAL AND NO.[1] | DESCRIPTION OF OBJECT OR ITEM | DATE | IDENTIFIED IN COURT | DATE ADMITTED | WITNESS ON STAND |
|---|---|---|---|---|---|
| 1 | Three Rivers Team Member Handbook | 1997 | | | |
| 2 | Deposition of V. Cotton | 2001 | | | |
| 3 | Defendant's First Set of Requests for Admission. | 2001 | | | |
| 4 | Letter dated 7/4/98 from V. Cotton to B. Ludlum | 7/4/98 | | | |
| 5 | Letter dated 7/22/98 from V. Cotton to J. Hogenmiller | 7/22/98 | | | |
| 6 | Letter dated 9/1/98 from V. Cotton to W. Lawson | 9/1/98 | | | |
| 7 | Affidavit of P. Casey | 10/6/01 | | | |
| 8 | Affidavit of L. Gelpi | 9/19/01 | | | |
| 9 | Letter dated 2/4/99 from S. Handy to L. Gelpi | 2/4/99 | | | |
| 10 | Memorandum dated 2/9/99 from L. Gelpi to W. Carmichael | 2/9/99 | | | |
| 11 | Memorandum dated 2/19/99 from W. Carmichael to File | 2/19/99 | | | |
| 12 | Memorandum dated 4/8/99 from W. Carmichael to File | 4/8/99 | | | |

---

[1]   Three Rivers reserves the right to use any exhibit included on Plaintiff's exhibit list.

| EXHIBIT INITIAL AND NO. | DESCRIPTION OF OBJECT OR ITEM | DATE | IDENTIFIED IN COURT | DATE ADMITTED | WITNESS ON STAND |
|---|---|---|---|---|---|
| 13 | Acknowledgment and Disclosure dated 4/29/99 | 4/29/99 | | | |
| 14 | Attendance List from 4/29/99 Compliance Meeting | 4/29/99 | | | |
| 15 | Deposition of A. Paglia | 2001 | | | |
| 16 | Memorandum dated 9/14/98 from W. Lawson to V. Cotton | 9/14/98 | | | |
| 17 | Memorandum dated 9/29/98 from W. Lawson to V. Cotton | 9/29/98 | | | |
| 18 | Memorandum dated 12/1/98 from W. Carmichael to V. Cotton | 12/1/98 | | | |
| 19 | Executed stock option agreement | 2/1/99 | | | |
| 20 | Evaluation form for V. Cotton | 5/6/99 | | | |
| 21 | Evaluation form for V. Cotton | 3/4/99 | | | |
| 22 | HUD-1 Settlement Sheet | 5/28/99 | | | |
| 23 | Selected pages of HCSW Managed Care Agreement | 12/98 | | | |
| 24 | HCSW Request for Proposals | 1998 | | | |
| 25 | W. Lawson handwritten notes re: agenda for 9/98 meeting w/ V. Cotton. | 9/98 | | | |
| 26 | W. Lawson handwritten notes (attachments to W. Lawson deposition) | 1998-1999 | | | |
| 27 | Signed statement of V. Cotton to J. Hogenmiller | 1998 | | | |
| 28 | Patricia Casey memorandum re: interactions with V. Cotton February 1998 | 2/98 | | | |
| 29 | Agenda for DPW on-site meeting | Summer 1999 | | | |
| 30 | Printouts of e-mail exchange re: Grantham case | 4/99 | | | |

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VICTOR R. COTTON,    :  No. 1:CV-00-1709

    Plaintiff,   :

          :  Judge Kane

  *vs.*       :

          :

THREE RIVERS HEALTH PLANS, :

INC., a corporation,   :

          :

    Defendant.  :

---

## DEFENDANT'S PROPOSED SPECIAL JURY INTERROGATORIES

---

   1.  Has Dr. Cotton proven, by a preponderance of the evidence, that he was a "health care provider" as the Pennsylvania General Assembly defined that term to mean a medical professional who provides covered health-care services to plan enrollees?

         \_\_\_\_ Yes \_\_\_\_ No

[If you answered "Yes," please continue to the next question.  If you answered "No," your verdict should be for the defendant and you should now return to the courtroom.]

2.      Has Dr. Cotton proven, by a preponderance of the evidence, that he advocated for "medically necessary and appropriate health care consistent with the degree of learning and skill ordinarily possessed by a reputable health care provider practicing according to the applicable legal standard of care"?

_____ Yes _____ No

3.      Has Dr. Cotton proven, by a preponderance of the evidence, that he protested "a decision, policy or practice that the health care provider, consistent with the degree of learning and skill ordinarily possessed by a reputable health care provider practicing according to the applicable legal standard of care, reasonably believes interferes with the health care provider's ability to provide medically necessary and appropriate health care"?

_____ Yes _____ No

[If you answered "Yes" to either No. 2 or No. 3, please continue to the next question.  If you answered "No" to *both* No. 2 and No. 2, your verdict should be for the defendant and you should now return to the courtroom.]

4.      Has Dr. Cotton proven, by a preponderance of the evidence, that Three Rivers terminated his employment because he advocated for medically necessary health care consistent with the legal standard of care *or* because Dr. Cotton protested a decision or policy that interfered with his ability to provide medically necessary health care consistent with the legal standard of care?

_____ Yes _____ No

[If you answered "Yes," please continue to the next question.  If you answered "No," your verdict should be for the defendant and you should now return to the courtroom.]

2

5.    Has Dr. Cotton proven, by a preponderance of the evidence, that Three Rivers did not have separate, plausible and legitimate reasons for terminating his employment?

_____ Yes _____ No

[If you answered "Yes," please continue to the next question.  If you answered "No," your verdict should be for the defendant and you should now return to the courtroom.]

*[You should consider the following questions, relating to damages, only if you have found that Dr. Cotton established liability by a preponderance of the evidence.]*

6.    Has Dr. Cotton proven by a preponderance of the evidence that he suffered damages as a result of Three Rivers' termination of his employment?

_____ Yes _____ No

[If you answered "Yes," please continue to the next question.  If you answered "No," you should now return to the courtroom.]

7.    If Dr. Cotton has proven by a preponderance of the evidence that he suffered damages as a result of Three Rivers' termination of his employment, what damages do you award, if any, for

Past Wages  $ _____

Future Wages  $ _____

3

8.    Has Three Rivers proven by a preponderance of the evidence that there were reasonable measures Dr. Cotton could have taken to reduce his damages that he did not take?

_____ Yes _____ No

[If you answered "Yes," please continue to the next question.  If you answered "No," please return to the courtroom.]

9.    By what amount do you find Dr. Cotton could have reduced his damages by taking reasonable measures after his termination?

$ _____

KIRKPATRICK & LOCKHART LLP

Mark A. Rush
David R. Fine
240 North Third Street
Harrisburg, PA  17101
(717) 231-4500

*Counsel for Defendant*

February 13, 2002

4

## **CERTIFICATE OF SERVICE**

I hereby certify that, February 13, 2002, I served a true and correct copy of the foregoing brief on the following by first-class United States Mail, postage-prepaid:

William E. Haggerty, Esq.
240 North Duke Street
Lancaster, PA  17602

David R. Fine